# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
### SOUTH BEND DIVISION

| | | |
|---|---|---|
| NANCY CRACE and DONALD WEED, individually and derivatively on behalf of Nominal Defendant ROBERT WEED PLYWOOD CORPORATION d/b/a ROBERT WEED CORPORATION, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| DAVID WEED and WILLIAM WEED, | ) | Case No.: 3:23-cv-00665 |
| Defendants, | ) ) | |
| and | ) ) | |
| ROBERT WEED PLYWOOD CORPORATION d/b/a ROBERT WEED CORPORATION, | ) ) ) ) | |
| Nominal Defendant. | ) | |

## VERIFIED COMPLAINT FOR DAMAGES AND JURY TRIAL DEMAND

Plaintiffs Nancy Crace ("Nancy") and Donald Weed ("Donald") (collectively, "Minority Shareholders" or "Plaintiffs"), individually and derivatively on behalf of Nominal Defendant Robert Weed Plywood Corporation d/b/a Robert Weed Corporation ("RWP" or the "Company"), by counsel, hereby file their *Verified Complaint for Damages and Jury Trial Demand* ("Complaint") against Defendants David Weed ("David") and William Weed ("William") (collectively, "Majority Shareholders" or "Defendants").  In support of their Complaint, Plaintiffs allege and state as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      At all relevant times herein, Nancy was a citizen of Hamilton County, Ohio.

2.      At all relevant times herein, Donald was a citizen of Collier County, Florida.

3.      At all relevant times herein, David was a citizen of Elkhart County, Indiana.

4.      At all relevant times herein, William was a citizen of Elkhart County, Indiana.

5.      Nominal Defendant RWP is an Indiana corporation located in Elkhart County, Indiana with a principal place of business located at 705 Maple St., P.O. Box 487, Bristol, Indiana, 46507.

6.      RWP was incorporated on January 17, 1967.

7.      Jurisdiction is properly invoked under 28 U.S.C. § 1331, as Plaintiffs and Defendants are diverse in this matter and the amount in controversy exceeds $75,000.00, exclusive of all fees and costs.

8.      Venue is proper in this proper in this Court under 28 U.S.C. § 1391, as Defendants reside in this District and all Defendants are citizens of Indiana.

## ACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### Parties and their Relationships to RWP

9.      On or around January 17, 1967, Robert Weed incorporated the entity known as Robert Weed Plywood Corporation.

10.      Upon information and belief, RWP is governed by a set of By-Laws applicable to the Company and its shareholders.

11.      Robert Weed was the father of Nancy, Donald, and David.  Robert Weed passed away in 2006, leaving shares of RWP to members of his family, including the Minority and Majority Shareholders.

12.     Prior to Robert Weed's death, David had Robert Weed declared to be legally incompetent in order to exert further control over RWP.

13.     At this time, David split the stock into "Class A" Stock and "Class B" Common Stock, with different rights and responsibilities.

14.     David took "Class A" Common Stock and gave Minority Shareholders "Class B" Common Stock, which is worth less and has fewer rights regarding corporate governance.

15.     After it became apparent that Robert Weed's legal incompetency would have drastic tax implications, David attempted to have Robert Weed declared to be legally competent again.

16.     As a result of Robert Weed's death and subsequent transfer of his shares to his children, David owned ninety-two thousand seven hundred fourteen (92,714) shares of RWP Common Stock.  This amounts to fifty and nine hundred ninety-eight thousandths percent (50.998%) of the outstanding RWP shares.

17.     Similarly, Donald owns or owned twenty-six thousand thirty-seven (26,037) shares of RWP Common Stock.  This amounts to fourteen and three hundred twenty-two thousandths percent (14.322%) of the outstanding RWP shares.

18.     Nancy owns or owned twenty-five thousand eight hundred thirty-five (25,835) shares of RWP Common Stock.  This amounts to fourteen and two hundred eleven thousandths percent (14.211%) of the outstanding RWP shares.

19.     William owns or owned three thousand six hundred one (3,601) shares of RWP Common Stock.  This amounts to one and nine hundred eighty-one thousandths percent (1.981%) of the outstanding RWP shares.

20.     After Robert Weed passed away, David took over the role of CEO and Chairman of the Board of RWP.

21.     The Company apparently remained profitable for a number of years, as Minority Shareholders continued to receive distributions after David assumed control of the Company.

22.     However, despite repeated requests from the Minority Shareholders, there was little to no transparency or reporting of Company operations to the Minority Shareholders.

23.     In addition to being siblings and shareholders of RWP, Donald, Nancy, and David were all beneficiaries of the Peggy Ann Weed Irrevocable Trust, dated September 18, 2009, and Amended as of November 8, 2012 (the "Peggy Trust").

24.     The Peggy Trust directed its trustee to distribute the trust estate equally to Nancy, Donald, and David.

25.     Upon information and belief, at one point, the Peggy Trust estate included among its assets a significant amount of cash – including tens of millions of dollars.

26.     When the Peggy Trust was amended in November 2012 it listed among its assets both "Promissory Notes from Robert Weed Plywood Corporation" as well as a "Warranty Mortgage on realty of Robert Weed Plywood Corporation."

27.     Upon information and belief, David took out a Note Payable (characterized as an installment sale) from the Peggy Trust valued at Eight Million Two Hundred Fifty Thousand Dollars ($8,250,000), which was payable in 2014.

28.     Upon information and belief, David also took out a Warranty Mortgage from the Peggy Trust, secured using realty of RWP, in the amount of Two Million Nine Hundred Seventy-Four Thousand Three Hundred Three Dollars ($2,974,303).  This Mortgage was due and payable in 2014.

29.     Minority Shareholders were never apprised of the incurrence of these significant liabilities, nor were Minority Shareholders apprised that these liabilities were ever satisfied.

30.     The incurrence of these liabilities decreased shareholder equity, and also made the shares held by Minority Shareholders appear to be worth less than they had been previously.

### Financial Misdeeds under David's Leadership

31.     On or around 2013, while CEO and Chairman of the Board for RWP, David divorced his spouse, Janet Weed, and paid as a settlement Ten Million Dollars ($10,000,000.00), which he took directly out of the Company's assets.  David assured Minority Shareholders that he would repay the money to RWP.  Despite repeated and continued requests, there has been no confirmation or indication that this money has been repaid to RWP.

32.     David also directed the withdrawal of significant sums of cash from the Peggy Trust, purportedly for the benefit of RWP, including a Note Payable and a Warranty Mortgage worth $8.25 million and $2.9 million, respectively.

33.     There has been no confirmation that the Note Payable and the Warranty Mortgage were ever repaid.

34.     Despite the withdrawal of those funds from the Peggy Trust, David also took out loans on behalf of RWP, using the assets of the Peggy Trust – which RWP did not own or have an interest in – as collateral for said loans.

35.     Upon information and belief, David, on behalf of RWP, attempted to establish a line of credit with a lender, and David used Eight Million Dollars ($8,000,000) from the Peggy Trust as the collateral for this line of credit.

36.     As of 2020, David was drawing a yearly salary of One Hundred Thirty-Eight Thousand Six Hundred Sixty-Four Dollars ($138,664) from the Company, in addition to the distributions of profit received.

37.     Additionally, David's son William was employed as a director and officer of RWP and was drawing a yearly salary from RWP of Two Hundred Sixty-Seven Thousand Four Hundred Seventeen Dollars ($267,417).

38.     Upon information and belief, both David and William received a portion of the revenue generated by RWP in addition to the above-listed yearly salaries.

39.     Sometime prior to 2021, David and William initiated a change of leadership at RWP, wherein William would succeed David as CEO.

40.     In conjunction with that change in leadership, on or around September 17, 2021, David and William executed an Employment Agreement for David Weed's "employment" at RWP that provided for a yearly salary of Two Hundred Thousand Dollars ($200,000), full benefits, and all "business expenses" paid (the "David Agreement").

41.     Despite stepping down as CEO, David's salary under the David Agreement represents a forty-four percent (44%) raise.

42.     This forty-four percent (44%) raise was given after the Company advised the Minority Shareholders that the Company was either a) no longer profitable, or b) would no longer be making distributions of profit to the shareholders.

43.     In fact, at one point William communicated to the Minority Shareholders something to the effect of "We are the ones doing the work and making the money, and we are not going to share it with you…" with the "We" being the Majority Shareholders and the "you" being the Minority Shareholders.

44.     Also, on or around September 17, 2021, David executed a Purchase and Sale Agreement, which transferred his interest in RWP to an entity serving as the trustee of the DAW 2021 Legacy Trust (the "DAW Trust").

45.     The Purchase and Sale Agreement relied on a valuation of RWP performed by Houlihan Capital Advisors, LLC, which valued David's shares at Two Million One Hundred Eighty-Two Thousand Four Hundred Fifty Dollars ($2,182,450).

46.     Upon information and belief, this valuation performed at the behest of David was calculated using only 2019 financials and did not reflect the actual value of RWP in September 2021.

47.     Upon information and belief, William and his family are the sole beneficiaries of the DAW Trust.

48.     Upon information and belief, the Purchase and Sale Agreement allows for a "Retroactive Correction to Purchase Price," which allows for the collection of a "Deferred Amount" by David if the Fair Market Value exceeds the purchase price of the shares.

49.     After David executed the Purchase and Sale Agreement, he attempted to induce Minority Shareholders to sell their shares at the same valued rate specified in the Purchase and Sale Agreement.

50.     However, David did not disclose to Minority Shareholders that the Purchase and Sale Agreement executed by David allowed for the retroactive payment of a "Deferred Amount," if the value of the shares exceeds the purchase price.

51.     At this time, David informed Minority Shareholders that they should sell their stock at the rate specified in the Purchase and Sale Agreement, because they would not be getting any further distributions from RWP.

52.     Up to and until that time, Minority Shareholders would receive regular distributions of profit from RWP.

53.     David has also incurred liabilities on behalf of RWP that reduces the "book value" of the shareholders' equity of the Company.

54.     These liabilities have remained on the financial statements of RWP to artificially deflate the value of the RWP shares held by Minority Shareholders in an effort to induce Minority Shareholders to sell.

55.     David attempted to induce Minority Shareholders to sell their shares at a reduced valuation, without offering them the retroactive adjustment of price that was a term of the Purchase and Sale Agreement.

56.     Minority Shareholders have repeatedly requested a fair and independent valuation of the Company, to ascertain the value of their shares more accurately.

57.     In assessing the offer David made to purchase her shares of RWP, Nancy asked for Company financial statements, information regarding Company debt, and information regarding Company assets that were currently being used as collateral.

58.     To date, Nancy has not received any of the information or documents that she requested in 2021.

59.     Also on March 21, 2021, a property located at 462 River Dock Rd. in Weiser, Idaho was, upon information and belief, sold from RWP to an unknown entity.  No information regarding this sale has been provided to Minority Shareholders.

60.     A property located at 3351 Eldridge Ave., in Twin Falls, Idaho, was transferred directly from RWP to David.  No information regarding this sale has been provided to Minority Shareholders.

61.     Furthermore, Minority Shareholders were not apprised of the David Agreement, nor were they apprised of the specific terms of the transfer to the DAW Trust.

62.     William was made CEO of RWP effective May 6, 2022.

63.     William was also appointed Chairman of the Board effective November 8, 2022.

64.     As of the date of this filing, David continues to collect a Two Hundred Thousand Dollar ($200,000) salary and benefits under the David Agreement.

65.     Meanwhile, the Company has refused and continues to refuse to equitably distribute proceeds to Minority Shareholders.

66.     As of the date of this filing, RWP has still not produced the documents requested by Minority Shareholders.

**Minority Shareholders Right to Bring Derivative Claims**

67.     Minority Shareholders fairly and adequately represent the interests of the owners of RWP similarly situated in enforcing the rights of RWP at issue in this case.

68.     Other than their demands for records Minority Shareholders have not made any demand that the RWP's directors, officers and/or managers investigate and address the allegations of breach of fiduciary duty, self-dealing, corporate waste, mismanagement, and use of corporate office to achieve personal objectives.

**COUNT I:**
**DERIVATIVE CLAIM FOR BREACH OF FIDUCIARY DUTY**

69.     Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

70.     Majority Shareholders, as officers, directors, shareholders, managers and/or members of the Company, owe fiduciary duties to the shareholders of the Company to act

faithfully, loyally, diligently, prudently, honestly, and carefully in conducting the business of the Company.

71.     At various times relevant to this Complaint, Majority Shareholders breached their fiduciary duties to the Company by not acting within the best interests of the Company and not acting toward the Company with the utmost fidelity, loyalty, care and good faith.

72.     Majority Shareholders' breaches of their fiduciary duties include the following actions taken as majority shareholders, board members, officers, and directors of the Company:

    a.    Majority Shareholders have paid themselves salaries wrongfully and grossly in excess of the reasonable value of their services to the Company.

    b.    Majority Shareholders have improperly and intentionally excluded Minority Shareholders from access to and participation in the rights of their ownership in the Company, including the right to access the books and records of the Company, the right to receive distributions of profits, and the right to participate in the management of the Company.

    c.    Majority Shareholders have improperly and intentionally caused the value of the shares of the Company to decrease, in order to fraudulently induce Plaintiffs to sell their own shares.

    d.    Majority Shareholders have improperly distributed assets of the Company to themselves, including Ten Million Dollars ($10,000,000) for a divorce settlement, and have not returned those assets to the Company.

    e.    Majority Shareholders have engaged in self-dealing, transferring real estate initially owned by the Company to themselves without disclosing these

transactions, having them approved by independent Board vote, or taking any other action to ensure no self-dealing occurs.

f.   Majority Shareholders have improperly used stock of the Company owned by Peggy Weed as collateral for loans from KeyBank, jeopardizing the assets of Minority Shareholders if Majority Shareholders default on the loan.

73.   To date, Defendants have taken no action to address the allegations of Majority Shareholders' breaches of their fiduciary duties.

74.   As a result of Majority Shareholders' breaches of the fiduciary duties, the Company has been greatly damaged, and the value of the Company's business and assets have been reduced, and as a result, the Company has suffered and will continue to suffer monetary damages and irreparable harm.

WHEREFORE, Plaintiffs Nancy Crace and Donald Weed, individually and derivatively on behalf of Nominal Defendant Robert Weed Plywood Corporation d/b/a Robert Weed Corporation, respectfully request that this Court enter judgment in their favor against Defendants David Weed and William Weed, to award compensatory, special, general and punitive damages, disgorgement of gains, restitution, costs of this action, pre- and post-judgment interest, attorney's fees and all other relief that is just and proper in the premises.

## COUNT II:
## DERIVATIVE CLAIM OF UNJUST ENRICHMENT

75.   Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

76.   Majority Shareholders have received funds, assets and valuable benefits in the form of improper salaries and unlawful distributions of profit from the Company.

77.     Majority Shareholders have been unjustly enriched, to the Company's detriment, by their receipt and retention of these funds, assets, and valuable benefits.

78.     To date, Defendants have taken no action to address the allegations of unjust enrichment.

79.     The Company has been damaged and continue to be damaged and suffer irreparable harm as a result of Majority Shareholders' unjust enrichment.

WHEREFORE, Plaintiffs Nancy Crace and Donald Weed, individually and derivatively on behalf of Nominal Defendant Robert Weed Plywood Corporation d/b/a Robert Weed Corporation, respectfully request that this Court enter judgment in their favor against Defendants David Weed and William Weed, for all amounts due and owing, along with attorney's fees, costs of this action and pre- and post-judgment interest, entry of an Order requiring Defendants to pay such amounts, and any and all other relief which is just and proper.

<u>COUNT III:</u>
### <u>DERIVATIVE CLAIM OF WASTE, SELF-DEALING, MISMANAGEMENT AND MISAPPROPRIATION OF CORPORATE ASSETS</u>

80.     Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

81.     Majority Shareholders, as officers, directors, shareholders, managers and/or members of the Company, have misappropriated corporate assets for their own use, utilized corporate property, resources and funds for their own personal benefit and advantage, misapplied and wasted corporate assets to the financial detriment of the Company and mismanaged the Company in the following ways:

a.     Majority Shareholders have paid themselves salaries wrongfully and grossly in excess of the reasonable value of their services to the Company.

b.   Majority Shareholders have improperly and intentionally excluded Minority Shareholders from access to and participation in the rights of their ownership in the Company, including the right to access the books and records of the Company, the right to receive distributions of profits, and the right to participate in the management of the Company.

c.   Majority Shareholders have improperly distributed assets of the Company to themselves, including Ten Million Dollars ($10,000,000.00) for a divorce settlement, and have not returned those assets to the Company.

d.   Majority Shareholders have engaged in self-dealing, transferring real estate initially owned by the Company to themselves without disclosing these transactions, having them approved by independent Board vote, or taking any other action to ensure no self-dealing occurs.

e.   Majority Shareholders have improperly and intentionally caused the value of the shares of the Company to decrease, in order to induce Plaintiffs to sell their own shares.

82.   Majority Shareholders caused the Company to pay them valuable financial benefits, including distributions of profit to Majority Shareholders, thereby violating the requirement that corporations must distribute all profits in proportion to the owner's percentage interest, and jeopardizing the Company's favorable tax treatment.

83.   To date, Defendants have taken no action to address the allegations of misappropriation of corporate assets for Majority Shareholders' own use, utilization of corporate property, resources and funds for their own personal benefit and advantage, waste of corporate assets to the financial detriment of the Company and mismanagement of the Company.

84.     As a result of their actions, the Company has been greatly damaged, exposed to risk, and the value of its business and assets has been reduced and misappropriated.  As a result, the Company has suffered and will continue to suffer monetary damages and irreparable harm.

WHEREFORE, Plaintiffs Nancy Crace and Donald Weed, individually and derivatively on behalf of Nominal Defendant Robert Weed Plywood Corporation d/b/a Robert Weed Corporation, respectfully request that this Court enter judgment in their favor against Defendants David Weed and William Weed, to award compensatory, special, general and punitive damages, disgorgement of gains, restitution, costs of this action, pre- and post-judgment interest, attorney's fees and all other relief that is just and proper in the premises.

### COUNT IV:
### DERIVATIVE CLAIM FOR CONSTRUCTIVE FRAUD

85.     Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

86.     David and William have engaged in a continuous, long-standing, calculated, and intentional pattern of paying themselves exorbitant salaries, bonuses and/or distributions, payment or reimbursement of personal expenses funded by the Company, and/or other methods of compensation as a deliberate scheme to decrease the distributive share of profits payable to the Minority Shareholders.

87.     As part of this pattern or scheme, Defendants have withheld, misreported, or otherwise hidden this behavior from the Company and Minority Shareholders.

88.     Despite the Company reporting nearly Nine Hundred Thousand Dollars ($900,000) in profit attributed to Donald and Nancy on their K-1s in recent years, Minority Shareholders have not received any distributions of profit since 2020.

89.     David and William owe legal and equitable duties to the Minority Shareholders and the Company not to deceive, violate confidences or injure their interests.

90.     David and William breached these duties, which breaches amount to fraud on the Company and its shareholders.

91.     As a direct and proximate result of these behaviors by David and William, the Company is subject to significant liabilities, including monetary and intangible harms.

92.     As a direct and proximate result of these behaviors by Defendants, the Company has suffered and will continue to suffer damages.

WHEREFORE, Plaintiffs Nancy Crace and Donald Weed, individually and derivatively on behalf of Nominal Defendant Robert Weed Plywood Corporation d/b/a Robert Weed Corporation, respectfully request that this Court enter judgment in their favor against Defendants David Weed and William Weed, to award compensatory, special, general and punitive damages, disgorgement of gains, restitution, costs of this action, pre- and post-judgment interest, attorney's fees and all other relief that is just and proper in the premises.

## COUNT V:
## DIRECT CLAIM FOR BREACH OF FIDUCIARY DUTY

93.     Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

94.     Majority Shareholders, as officers, directors, shareholders, managers and/or members of the Company, owe fiduciary duties to the shareholders and members of the Company to act faithfully, loyally, diligently, prudently, honestly and carefully in conducting the business of the Company for the benefit of the shareholders and members.

95.     At various times relevant to this Complaint, Majority Shareholders breached their fiduciary duties to Minority Shareholders as a shareholders and members by not acting within the

best interests of the Company or its other owners, and not acting toward the Company and its other owners with the utmost fidelity, loyalty, care and good faith.

96.     Majority Shareholders' breaches of their fiduciary duties include the following actions taken as majority shareholders of the Company:

a.     Majority Shareholders have paid themselves salaries wrongfully and grossly in excess of the reasonable value of their services to the Company.

b.     Majority Shareholders have improperly and intentionally excluded Minority Shareholders from access to and participation in the rights of their ownership in the Company, including the right to access the books and records of the Company, the right to receive distributions of profits, and the right to participate in the management of the Company.

c.     Majority Shareholders have improperly distributed assets of the Company to themselves, including Ten Million Dollars ($10,000,000) for a divorce settlement, and have not returned those assets to the Company.

d.     Majority Shareholders have improperly and intentionally caused the value of the shares of the Company to decrease, in order to force Plaintiffs to sell their own shares.

e.     Majority Shareholders have engaged in self-dealing, transferring real estate initially owned by the Company to themselves without disclosing these transactions, having them approved by independent Board vote, or taking any other action to ensure no self-dealing occurs.

f.     Majority Shareholders have attempted to induce Minority Shareholders to sell their shares at for less than fair value, by purporting to have sold their

own shares for the same price. David did sell his shares to a Wyoming Trust for a reduced value, but included a provision that would allow the Company to pay him more if the shares increased in value.

97.     As a result of Majority Shareholders' breaches of their fiduciary duties, the Company has been greatly damaged, exposed to risk, and the value of its business and assets have been reduced, thereby reducing the value of Minority Shareholders' investment in the Company. As a result, Minority Shareholders have suffered and will continue to suffer monetary damages and irreparable harm.

WHEREFORE, Plaintiffs Nancy Crace and Donald Weed, individually, respectfully request that this Court enter judgment in their favor against Defendants David Weed and William Weed, to award compensatory, special, general, and punitive damages, disgorgement of gains, restitution, costs of this action, pre- and post-judgment interest, attorney's fees, and all other relief that is just and proper in the premises.

<u>**COUNT VI:**</u>
<u>**DIRECT CLAIM FOR CONSTRUCTIVE FRAUD**</u>

98.     Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

99.     David and William have engaged in a continuous, long-standing, calculated, and intentional pattern of paying themselves exorbitant salaries, bonuses and/or distributions, payment or reimbursement of personal expenses funded by the Company, and/or other methods of compensation as a deliberate scheme to decrease the distributive share of profits payable to the Minority Shareholders.

100.     As part of this pattern or scheme, Defendants have withheld, misreported, or otherwise hidden this behavior from the Minority Shareholders.

101.     Despite the Company reporting nearly Nine Hundred Thousand Dollars ($900,000) in profit attributed to Donald and Nancy on their K-1s in recent years, Minority Shareholders have not received any distributions of profit since 2020.

102.     David and William owe legal and equitable duties to the Minority Shareholders and the Company not to deceive, violate confidences or injure their interests.

103.     David and William breached these duties, which breaches amount to a fraud on the Minority Shareholders.

104.     As a direct and proximate result of these behaviors by David and William, the Company is subject to significant liabilities, including monetary and intangible harms.

105.     As a direct and proximate result of these behaviors by Defendants, the Minority Shareholders have suffered and will continue to suffer damages.

WHEREFORE, Plaintiffs Nancy Crace and Donald Weed, individually, respectfully request that this Court enter judgment in their favor against Defendants David Weed and William Weed, to award compensatory, special, general, and punitive damages, disgorgement of gains, restitution, costs of this action, pre- and post-judgment interest, attorney's fees, and all other relief that is just and proper in the premises.

## COUNT VII:
## ACCOUNTING

106.     Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

107.     At all relevant times, Majority Shareholders owed fiduciary duties to the shareholders and members of the Company to act faithfully, loyally, diligently, prudently, honestly and carefully in conducting the business of the Company for the benefit of the shareholders and members.

108.     In breach of their fiduciary duties, Majority Shareholders caused the Company to pay or provide them through improper salaries, payments, and unlawful distributions of profit from the Company, funds that were improperly diverted, misappropriated, or wasted.

109.     As a result of this misconduct, Minority Shareholders have been substantially injured and damaged financially and are entitled to recovery as a result thereof, including the payment of all distributions of profit that were improperly calculated or withheld from them by Majority Shareholders.

110.     Plaintiffs demand an accounting be made of all of the following:

a.     All records related to the sale or provision of the Company's products or services, including but not limited to sales records supporting the Company's financial reports.

b.     All records related to and/or documenting all compensation, wages, salary, bonuses, commissions, and consulting fees paid to Majority Shareholders or for their benefit.

c.     All bank statements, credit card statements or other ledgers from accounts held, owned, related to or used for the benefit of the Company.

d.     Records of all capital contributions, short term loans, long term loans, lines of credit or other financial instruments related to the operations of the Company.

e.     Records evidencing any transfers of real estate assets held by the Company.

f.     Records evidencing all debt obligations incurred on behalf of the Company.

g.     Records evidencing any loans, gifts, advances or other disbursements or financial benefits conferred on any party and made by the Company.

WHEREFORE, Plaintiffs Nancy Crace and Donald Weed, individually, respectfully request that this Court order an accounting of the business, affairs, management, oversight and operations conducted under the sole authority and control of Majority Shareholders for and on behalf of Robert Weed Plywood Corporation d/b/a Robert Weed Plywood, to determine all of the compensation, bonuses, and other valuable benefits Majority Shareholders have received from Robert Weed Plywood Corporation d/b/a Robert Weed Plywood, and to award compensatory, special, general and punitive damages, disgorgement of gains, restitution, costs of this action, pre- and post-judgment interest, attorney's fees and all other relief that is just and proper in the premises.

## **JURY DEMAND**

Plaintiffs Nancy Crace and Donald Weed, by counsel, hereby demand a trial by jury on all claims of relief, where available.

Respectfully submitted,

*s/William J. Brinkerhoff*
B.J. Brinkerhoff, Attorney No. 24811-53
Olivia N. Daily, Attorney No. 36342-55
JESELSKIS BRINKERHOFF AND JOSEPH, LLC
320 North Meridian Street, Suite 428
Indianapolis, Indiana 46204
Telephone: (317) 220-6290
Facsimile: (317) 220-6291
bjbrinkerhoff@jbjlegal.com
odaily@jbjlegal.com

*Counsel for Plaintiffs*

## **<u>VERIFICATION</u>**

I affirm, under the penalties of perjury, that the foregoing factual representations are true and accurate to the best of my knowledge and belief.

*Nancy Crace*

_____

Nancy Crace

21

## <u>VERIFICATION</u>

I affirm, under the penalties of perjury, that the foregoing factual representations are true and accurate to the best of my knowledge and belief.

*Donald Weed*

_____

Donald Weed

22