UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| NANCY CRACE, DONALD WEED, <br><br> Plaintiffs, <br><br> v. <br><br> ROBERT WEED PLYWOOD CORPORATION, DAVID WEED, WILLIAM WEED, <br><br> Defendants. | Case No. 3:23-CV-665-CCB-APR |

## ORDER

Before the Court are three motions to dismiss: one filed by the Robert Weed Plywood Corporation [DE 39], one filed by David Weed [DE 38], and another filed by William Weed. [DE 40.]

**FACTUAL BACKGROUND**

On January 17, 1967, Robert Weed started the Robert Weed Plywood Corporation ("Company") [DE 1, ¶ 9]. Robert passed away in 2006 and left the Company to his children. *Id.* ¶ 11. After his death, David Weed received 50.998% of the shares, while Donald Weed received 14.322%, and Nancy Crace received 14.211% respectively *Id.* ¶¶ 16-18. When Robert died, David also became CEO and Chairman of the Company. *Id.* ¶ 20. Under his leadership, the Company was initially profitable, and the minority shareholders received distributions *Id.* ¶ 21. Even so, despite repeated requests, the minority shareholders were given little information about the Company's operations. *Id.* ¶ 22.

Donald, Nancy, and David were beneficiaries of the Peggy Ann Weed Irrevocable Trust, established in 2009, and amended in 2012 ("Peggy Trust"). *Id.* ¶ 23. David allegedly took out an $8.25 million note payable from the Peggy Trust, due in 2014, as well as a $2.97 million mortgage secured by the Company's property. *Id.* ¶¶ 27-28. The Plaintiffs were not told about these liabilities

or whether they were ever satisfied. *Id.* ¶ 29.  These liabilities allegedly reduced shareholder equity, and the value of the shares the Plaintiffs hold. *Id.* ¶ 30.

In 2013, David allegedly paid a $10 million settlement to his ex-wife using the Company's funds and David provided no confirmation that this amount was repaid despite multiple requests for confirmation. *Id.* ¶ 31.  David also allegedly withdrew significant amounts from the Peggy Trust, purportedly for the Company's benefit, yet there has been no confirmation that these liabilities were ever repaid. *Id.* ¶¶ 32 - 33.

As of 2020, David was drawing an annual salary of $138,664 from the Company and received distributions of profit. *Id.* ¶ 36.  David's son, William Weed, was employed as a director and officer of the Company, and earned $267,417. *Id.* ¶ 37.  William eventually took over as CEO of the Company. *Id.* ¶ 39.  On September 17, 2021, William and David executed an employment agreement that gave David a $200,000 per year salary, full benefits, and coverage of all business expenses. *Id.* ¶ 40.  This represented a 44% salary increase for David even though he stepped down as CEO and the Company was purportedly losing money by this time. *Id.* ¶¶ 40-43.

## LEGAL STANDARD

In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010).  A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement must contain enough factual matter, accepted as true, to state a plausible claim, not a speculative one. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim must be plausible, not probable. *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012).  Whether a claim is plausible enough to survive a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and

common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678)).

## ANALYSIS

### I.   Statute of Limitations

The Defendants argue that the Plaintiffs' claims are barred by the statute of limitations. [DE 38, pg. 13; DE 40, pg. 13; DE 39, pg. 6-7.] When determining the law to apply to the statute of limitations issue, this Court must apply the substantive law of Indiana. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Under Indiana's "discovery rule" the statute of limitations begins to run "when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another." *DiMaggio v. Rosario*, 52 N.E.3d 896, 905 (Ind. Ct. App. 2016) (citations omitted). Also, under Indiana's fraudulent concealment statute, "[i]f a person liable to an action conceals the fact from the knowledge of the person entitled to bring the actions, the action may be brought at any time within the period of limitation after the discovery of the cause of action." *Gonzalez v. ADT LLC*, 161 F. Supp. 3d 648, 655 (N.D. Ind. 2016) (citing Ind. Code. § 34–11–5–1). The statute of limitations is an affirmative defense, and the Plaintiffs are not required to plead around it. *Gonzalez*, 161 F. Supp. 3d 648, 657. A court may order dismissal of a case based on an affirmative defense but only when the allegations in the complaint "set forth everything necessary to satisfy the affirmative defense." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005).

Whether the Plaintiffs knew or could have known about the alleged misdeeds is a question of fact that the Court will not resolve now. At this stage, the Court must construe all reasonable inferences in favor of the Plaintiffs. There are several allegations in the complaint indicating that the Plaintiffs were kept in the dark about the alleged misdeeds. The Plaintiffs allege that "despite repeated requests" for information "there was little to no transparency or reporting of Company

3

operations" to the Plaintiffs. [DE 1, ¶ 22.]  The Plaintiffs alleged that David used the Company's property as collateral for a mortgage but the Plaintiffs "were never apprised of the incurrence of these significant liabilities" and they were not "apprised that these liabilities were ever satisfied." *Id.* ¶ 29.  The Plaintiffs allege that Nancy Crace "asked for Company financial statements, information regarding Company debt, and information regarding Company assets that were currently being used as collateral" but she "has not received any of the information or documents that she requested in 2021." *Id.* ¶¶ 57-58.  These allegations support an inference that the Plaintiffs were unaware of the alleged misdeeds until recently.  Ultimately, the success or failure of the affirmative defense will depend on how the factfinder views the evidence presented. *See Gonzalez*, 161 F. Supp. 3d 648, 657 (stating that the statute of limitations is an affirmative defense that "is better left for summary judgment when [the presiding judge] will be dealing with facts, not allegations.").

## II.    Indispensable Parties & Federal Rule 12(b)(7)

David Weed argues that this case should be dismissed under Fed.R.Civ.P. 12(b)(7) because the Plaintiffs failed to join the Peggy Trust. [DE 38, pg. 8.]  The Seventh Circuit outlined how courts should evaluate motions to dismiss under Rule 12(b)(7):

> [I]n deciding a Rule 12(b)(7) motion to dismiss, we must apply Rule 19(b) if we first determine that the party to be joined satisfies the threshold requirements of Rule 19(a). *Moore v. Ashland Oil, Inc.,* 901 F.2d 1445, 1447 (7th Cir.1990). Thus, Rule 19(a) requires joinder when the presence of the party to be joined is essential to the litigants' complete relief, or when the party to be joined must be present to protect its own or another party's interests. Fed.R.Civ.P. 19(a). If the court finds that the requirements of Rule 19(a) are satisfied, it may dismiss the action if, in weighing four additional factors specified in Rule 19(b), those factors so indicate.

*Boulevard Bank Nat'l Ass'n v. Philips Medical Sys. Int'l*, 15 F.3d 1419, 1422–23 (7th Cir.1994)); *See Taylor v. Chater*, 907 F. Supp. 306, 309 (N.D. Ind. 1995).  To succeed, "[t]he proponent of a Rule 12(b)(7) motion to dismiss has the burden of producing evidence which shows the nature of the absent party's interest, and that the protection of that interest will be impaired or impeded by the absence." *Chater, 907 F. Supp* at 309.  David fails to show why this Court cannot grant complete relief among

4

existing parties.  The complaint details how the Defendants allegedly used the Peggy Trust to facilitate their misconduct, but it does not assert any claim for relief as to the trust.  Moreover, David has not demonstrated that the requested relief, if granted, would require the Peggy Trust to take any action or pay damages.  David has not carried his burden of producing evidence to convince this Court that the Peggy Trust is a necessary party to this litigation.

### III.     Derivative or Direct

Counts I through IV of the Plaintiffs' Complaint are presented as derivative claims.[1]  Counts V through VII are presented as "direct claims."[2]  The Company and William Weed argue that Counts V through VII, despite being presented as direct claims are derivative in nature and are thus, like Counts I through IV, subject to the requirements and defenses under Indiana Code Section 23-1-32-1 *et seq.* and Fed. R. Civ. P. 23.1.  The Court will examine the substance of the claims for relief rather than the labels used when construing the counts set forth in the Plaintiffs' Complaint. *Fry v. Napoleon Community Schools*, 137 S.Ct. 743, 755 (2017).

A derivative action is one that is brought by a shareholder to "redress an injury sustained by, or enforce a duty owed to, a corporation." *G&N Aircraft, Inc. v. Boehm*, 743 N.E.2d 227, 234 (Ind. 2001).  Before a shareholder can sue in a derivative action, they must demand that the corporation bring a lawsuit on its own behalf. *Boland v. Engle*, 113 F.3d 706, 710 (7th Cir. 1997).  The complaint in a derivative action must be verified and allege with particularity the demand made, and indicate that the demand was refused, ignored, or otherwise must state why no demand was made. Ind. Code § 23-1-32-2; Fed. R. Civ. P. 23.1.  However, a shareholder need not make a demand where a demand would be futile. *In re Biglari Holdings, Inc.*, 813 F.3d 648, 650 (7th Cir. 2016).  The Plaintiffs

---

[1] Count I: Derivative Claim for Breach of Fiduciary Duty; Count II: Derivative Claim of Unjust Enrichment; Count III: Derivative Claim of Waste, Self-Dealing, Mismanagement and Misappropriation of Corporate Assets; Count IV: Derivative Claim for Constructive Fraud. [DE 1].

[2] Count V: Direct Claim for Breach of Fiduciary Duty; Count VI: Direct Claim for Constructive Fraud; Count VII: Accounting. [DE 1].

5

did not allege that they made a demand upon the Company's board before bringing this lawsuit. In fact, the Plaintiffs acknowledge in their complaint that they did not make a demand before bringing this lawsuit:

> Other than their demands for records Minority Shareholders have not made any demand that the RWP's directors, officers and/or managers investigate and address the allegations of breach of fiduciary duty, self-dealing, corporate waste, mismanagement, and use of corporate office to achieve personal objectives.

[DE 1, ¶ 68.] Further, the Plaintiffs' Complaint does not even allege that a demand would be futile. The Defendants argue that the Plaintiffs' failure to allege that they made a demand upon the Company's board or that a demand would be futile, requires dismissal of the Plaintiffs' derivative claims. The Plaintiffs argue that the exception in *Barth v. Barth*, 659 N.E.2d 559 (Ind. 1995), applies to these claims, and they are therefore excused from the demand/futility requirements. Before analyzing *Barth*, the Court will first examine whether Counts V through VII should also be evaluated as derivative claims, despite being labeled as direct claims.

A direct action seeks to "enforce a shareholder's rights against a corporation." *G&N Aircraft, Inc. v. Boehm*, 743 N.E.2d 227, 234 (Ind. 2001) (quoting Black's Law Dictionary at 455 (7th ed. 1999)). A direct action may be brought when the shareholder suffers an injury that is a "separate and distinct injury different from that of other shareholders." *Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 649 (7th Cir. 2006). Counts V through VII focus on harm to the Company as a whole rather than harm that is unique to the Plaintiffs. In Count V, the Plaintiffs contend that "the Company" has been damaged by the alleged breach of fiduciary duties, which in turn has lowered the Plaintiffs' investment in the Company. [DE 1, ¶ 97.] In Count VI, the Plaintiffs contend that "the Company is subject to significant liabilities" which in turn has caused the Plaintiffs' alleged damages. [DE 1, ¶¶ 104-105.] And in Count VII, the Plaintiffs seek an accounting in response to the alleged breaches committed by the majority shareholders, which allegedly resulted in the *Company* paying improper salaries, improperly distributing profits, and misusing corporate funds. [DE 1, ¶¶ 108-109.] The

6

central thrust under these counts is that the Company itself has been damaged, which has in turn lowered the value of the Plaintiffs' stake in the Company. But alleging that their stake in the Company has been harmed is not a "separate [or] distinct" harm from the shareholders who are not parties to this case. *Massey*, 464 F.3d at 649. If the Defendants' actions did harm the Plaintiffs' stake in the Company, it follows that the shareholders who are not plaintiffs in this case were harmed in the same way. Thus, the Court concludes that these counts are derivative because they focus on the alleged harm to the Company as a whole.

Having concluded that Counts I through VII raise derivative claims, the Court must now determine whether the Plaintiffs' claims can proceed under the *Barth* exception. 659 N.E.2d 559, 562 (Ind. 1995). In *Barth*, the Indiana Supreme Court explained that in the case of a closely held corporation, a trial court has discretion to treat an action raising derivative claims as a direct action. *Id*. A direct action is a lawsuit to enforce a shareholder's rights against a corporation. *DiMaggio v. Rosario*, 52 N.E.3d 896, 907 (Ind. Ct. App. 2016). In direct actions, the plaintiff is exempt from those restrictions and defenses applicable only to derivative actions, and need not make a demand before suing. *Cole Real Estate Corp. v. Peoples Bank & Trust Co.*, 160 Ind. App. 88, 310 N.E.2d 275 (1974). In order to treat the Plaintiffs' claims as a direct action, the Court must find that to do so would not "(i) unfairly expose the corporation or the defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons." *Barth*, 659 N.E.2d at 562 (citing A.L.I., Principles of Corporate Governance § 7.01(d)).

The Plaintiffs argue that the *Barth* exception should apply for three reasons. [DE 46, pg. 8.] First, they contend that there is no danger of a multiplicity of action because almost all of the Company's shareholders are parties to this case. *Id*. However, there are no allegations that alleviate concerns that future actions could be brought by shareholders who are not parties to this litigation. Based on the allegations in the complaint, there is still a possibility that the remaining shareholders

7

could bring an action, thus exposing the Company to a multiplicity of actions. Second, the Plaintiffs contend that there is no evidence that the Company's creditors will be prejudiced by the lawsuit. *Id.* at 9. However, at this stage, the Court must evaluate the sufficiency of the pleadings rather than evidence presented by the parties. Thus, the mere assertion in the Plaintiffs' brief that there is no evidence of prejudice to a creditor does not address whether the Plaintiffs have alleged facts in their complaint that satisfy the *Barth* exception. Third, the Plaintiffs argue that there is no indication that allowing this case to proceed would interfere with the fair distribution of the recovery among interested parties. *Id.* However, the Plaintiffs have not offered factual allegations to lessen concerns that allowing this case to proceed as a direct action would interfere with the fair distribution of recovery. The Plaintiffs have failed to plead facts showing that the *Barth* exception should apply, and that they should be excused from the requirements of Ind. Code § 23-1-32-1 *et seq.* and Fed. R. Civ. P. 23.1. Accordingly, all of the Plaintiffs' claims shall be dismissed without prejudice for failure to state a claim.

## CONCLUSION

For all these reasons:

1. Defendant David Weed's Motion to Dismiss [DE 38] is GRANTED.

2. Defendant William Weed's Motion to Dismiss [DE 40] is GRANTED.

3. Defendant Robert Weed Plywood Corporation's Motion to Dismiss Counts I through IV [DE 39] is GRANTED.

4. Accordingly, Plaintiffs' Verified Complaint for Damages and Jury Trial Demand is DISMISSED without prejudice. Plaintiffs shall have to and including October 15, 2024, to file an Amended Complaint.

8

SO ORDERED.
September 24, 2024

                 /s/*Cristal C. Brisco*
                 CRISTAL C. BRISCO, JUDGE
                 UNITED STATES DISTRICT COURT