UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| NANCY CRACE, DONALD WEED, | |
| Plaintiffs, | |
| v. | Case No. 3:23-CV-665-CCB-APR |
| ROBERT WEED PLYWOOD CORPORATION, DAVID WEED, WILLIAM WEED, | |
| Defendants. | |

## OPINION AND ORDER

Before the Court are three motions to dismiss Plaintiffs' First Amended Verified Complaint for Damages and Jury Trial Demand (ECF 59)[1]. One was filed by Defendant David Weed (ECF 71), another by Defendant Robert Weed Plywood Corporation (ECF 73), and the third by Defendant William Weed (ECF 74). Each motion seeks dismissal of all seven counts in the first amended complaint. Based on the applicable law, facts, and arguments, all three motions to dismiss will be granted.

I. **RELEVANT BACKGROUND**

This case arises from events at Robert Weed Plywood Corporation ("the Company"), a closely held corporation. The following facts are alleged in the First

---

[1] Jurisdiction arises in this case based on the diversity of citizenship among the parties consistent with 28 U.S.C. § 1332 and this Court's previous ruling identifying Robert Weed Plywood Corporation as an actual defendant rather than a nominal defendant. (*See* ECF 6). Nothing in the first amended complaint changes the Court's previous jurisdictional analysis.

Amended Verified Complaint ("FAC") and accepted as true for purposes of deciding the pending motions to dismiss.

The Company was started on January 17, 1967, by Robert Weed. (ECF 59 at 2). Robert passed away in 2006 and left the Company to his children—Plaintiff Nancy Crace, Plaintiff Donald Weed, and Defendant David Weed. (*Id.*). After Robert's death, David received 50.998% of the Company's shares, while Donald and Nancy received 14.322% and 14.211% respectively. (*Id.* at 3). When Robert died, David also became CEO and Chairman of the Company. (*Id.* at 4). Under David's leadership, the Company was initially profitable such that Plaintiffs received profit distributions as shareholders. (*Id.*). Even so, Plaintiffs were given little information about the Company's operations despite repeated requests. (*Id.*).

Donald, Nancy, and David were beneficiaries of the Peggy Ann Weed Irrevocable Trust, established in 2009 and amended in 2012 ("Peggy Trust"). (*Id.*). David took out an $8.25 million note from the Peggy Trust, payable in 2014. (*Id.*). David also took out a $2.97 million mortgage from the Peggy Trust and secured it with property owned by the Company. (*Id.* at 4–5). Plaintiffs were not told about these liabilities or whether they were ever repaid. (*Id.* at 5). According to Plaintiffs, these liabilities, purportedly incurred for the benefit of the Company, "decreased shareholder equity," and the value of the shares they hold. (*Id.*).

In 2013, David paid a $10 million settlement to his ex-wife using the Company's assets assuring Plaintiffs that he would repay the Company. (*Id.*). David has not confirmed to Plaintiffs that this amount was repaid despite multiple requests for

2

confirmation. (*Id*.). And David took out other loans and tried to establish a line of credit on behalf of the Company using Peggy Trust assets as collateral. (*Id*.).

As of 2020, David was drawing an annual salary of $138,664 from the Company and received distributions of profit. (*Id*.). David's son, Defendant William Weed, was also employed as a director and officer of the Company and drew an annual salary of $267,417. (*Id*. at 6). On September 17, 2021, William and David executed an employment agreement for David's employment at the Company providing a yearly salary of $200,000 for him along with full benefits and coverage of all business expenses. (*Id*. at 6). Before David received this 44% salary increase, the Company advised Donald and Nancy that the Company was either no longer profitable or would stop making profit distributions to shareholders. (*Id*.). Plaintiffs have not received any profit distributions since 2020. (*Id*. at 19).

William replaced David as CEO of the Company on May 6, 2022, and as Chairman of the Company's Board on November 8, 2022. (*Id*. at 9). William owns or owned 1.981% of the Company's shares. (*Id*. at 3). Peggy Weed, recently deceased, or the Peggy Trust owns or owned the shares of the Company not owned by David, Donald, Nancy, and William. (*Id*. at 4).

On these facts, Plaintiffs bring four explicitly derivative claims[2] and three direct claims[3] in the FAC against David and William. Plaintiffs' claims are all based on

---

[2] Count I: Breach of Fiduciary Duty; Count II: Unjust Enrichment; Count III: Waste, Self-Dealing, Mismanagement, and Misappropriation of Corporate Assets; and Count IV: Constructive Fraud.

[3] Count V: Breach of Fiduciary Duty; Count VI: Constructive Fraud; and Count VII: Accounting

3

David's and William's alleged financial misdeeds in their roles at the Company, which allegedly increased the value of their own shareholder benefits to intentionally decrease the shareholder benefits owed to Plaintiffs. In raising their direct claims, Plaintiffs identify two known creditors of the Company. (*Id*. at 19). They allege they are entitled to recover damages owed them personally and that the creditors are owed less than they are. (*Id*.). They also state that no other shareholders could bring claims against David and William on these grounds. (*Id*.).

Beyond their demands for records, Plaintiffs have not made any demand upon the Company's directors, officers, or managers to investigate and address their allegations of breach of fiduciary duty, self-dealing, corporate waste, mismanagement, and use of corporate office to achieve personal objectives. (*Id*. at 9). Plaintiffs allege that such a demand would be futile because David and William would be responsible for investigating their own actions; are not disinterested; would be subject to significant risk of personal liability for Plaintiffs' claims against them; and historically have both withheld information from Plaintiffs and interfered with their attempts to enforce their shareholder rights. (*Id*.).

With some modified allegations, the FAC includes the same seven counts raised and dismissed by this Court in the original complaint. (*Compare* ECF 59, *with* ECF 1 and 56). In dismissing the original complaint, the Court found that the statute of limitations question must be decided by a factfinder; Plaintiffs' direct claims were derivative claims; the original complaint did not plead demand, demand futility, or the *Barth* exception to the demand requirement; and Plaintiffs did not satisfy the demand

requirement for their claims. (ECF 56). These same issues drive Defendants' instant motions to dismiss.

## II.  LEGAL STANDARD

The Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor when reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement must contain enough factual matter, accepted as true, to state a plausible claim, not a speculative one. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim must be plausible, not probable. *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Whether a claim is plausible enough to survive a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678)).

## III. ANALYSIS

### A.  Statute of Limitations

Defendant David Weed once again argues that Plaintiffs' claims are barred by the statute of limitations. The Court already addressed Plaintiffs' previous argument that David and William's alleged fraudulent concealment tolled the applicable statute of limitations. (ECF 56 at 3–4). The Court identified allegations in the original complaint showing that Plaintiffs were "kept in the dark about the alleged misdeeds" supporting

5

an inference that Plaintiffs "were unaware of the alleged misdeeds until recently." (*Id*.). From that, the Court concluded that "the success or failure of [the statute of limitations] affirmative defense will depend on how the factfinder views the evidence presented." (*Id*. at 4 (citing *Gonzalez v. ADT LLC,* 161 F. Supp. 3d 648, 657 (N.D. Ind. 2016)).

David now presents two new arguments. First, David raises arguments based on an exhibit attached to his motion to dismiss that was not referenced in the FAC. (ECF 71-1). The exhibit included consent forms signed by the Company's shareholders and directors in January of each year from 2012 through 2017. (*Id*.). When a party attaches documents to a motion to dismiss, Fed. R. Civ. P. 12(d) requires either conversion of the 12(b)(6) motion into a motion for summary judgment, or exclusion of the attached documents to continue the Rule 12 analysis. *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). Documents attached to a 12(b)(6) motion to dismiss may be considered when conducting the 12(b)(6) analysis only if the documents are referred to in the complaint *and* they are central to the claim raised in the complaint. *Levenstein*, 164 F.3d at 347. The district court retains discretion to determine whether to convert a motion to dismiss into a motion for summary judgment. *Id.* The centrality of the consent forms is irrelevant here because they were not referred to in the FAC. So the Court declines to exercise its discretion to convert David's motion to dismiss into one for summary judgment just to consider these consent forms. The Court will disregard the consent forms in deciding David's motion to dismiss.

Second, David expands his statute of limitations argument by invoking Fed. R. Civ. P. 9(b), which requires parties alleging fraud to "state with particularity the

6

circumstances constituting fraud . . . ." David contends that the FAC alleges no facts of fraudulent concealment with particularity to support tolling the statute of limitations. Yet the statute of limitations is an affirmative defense, and plaintiffs need not plead around it. *United States v. N. Tr. Co.*, 372 F.3d 886, 888 (7th Cir. 2004). A court may order dismissal of a case based on an affirmative defense but only when the allegations in the complaint "set forth everything necessary to satisfy the affirmative defense." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). The FAC alleges essentially the same facts alleged in the original complaint, including that Plaintiffs were kept in the dark about the alleged misdeeds, which still supports an inference that they were unaware of the alleged misdeeds until recently. These facts implicate whether the statute of limitations was tolled. As a result, the FAC does not set forth everything needed to show that the affirmative defense was satisfied. That determination remains best suited to the factfinder.

    **B.**    **Derivative or Direct**

Counts I through IV of the FAC explicitly present "derivative" claims. Counts V through VII are explicitly "direct" claims. Different from the original complaint, Counts V and VI of the FAC allege that both Plaintiffs were harmed individually by David and William's alleged misdeeds. (ECF 59 at 17–19). They allege they were damaged by being "exposed to personal risk and liability [while] receiv[ing] none of the financial benefits of ownership of [the Company] that [David and William] have enjoyed." (*Id*. at 18, 19). Counts V and VI also identify two of the Company's creditors and allege that Plaintiffs' damages exceed the Company's debts to those creditors. (*Id.*). And lastly, Counts V and

7

VI allege that no other shareholders could bring claims against David and William for this cause of action because Plaintiffs "are the only living remaining shareholders" of the Company. (*Id.*).

David argues that Plaintiffs have not stated any claim for which relief can be granted, repeating almost verbatim the arguments in his original motion to dismiss. The Company and William Weed argue that the FAC still presents seven derivative claims, regardless of their label, and that all should be dismissed for Plaintiffs' failure to plead demand or demand futility or the *Barth* exception to the demand requirement. William also argues that Plaintiffs' claims should all be dismissed because they do not allege any wrongful acts by him.

When assessing whether claims are derivative claims even when labeled direct claims, courts examine the substance of the claims for relief rather than their labels. *Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 169 (2017). A derivative action is one brought by a shareholder to "redress an injury sustained by, or enforce a duty owed to, a corporation." *G&N Aircraft, Inc. v. Boehm*, 743 N.E.2d 227, 234 (Ind. 2001). Before bringing a derivative action, a shareholder must demand that the corporation bring a lawsuit on its own behalf. *Boland v. Engle*, 113 F.3d 706, 710 (7th Cir. 1997). The complaint in a derivative action must be verified and allege with particularity the demand made, and indicate that the demand was refused, ignored, or otherwise must state why no demand was made. Ind. Code § 23-1-32-2; Fed. R. Civ. P. 23.1. That said, a shareholder need not make a demand where a demand would be futile. *In re Biglari Holdings, Inc.*, 813 F.3d 648, 650 (7th Cir. 2016).

8

A direct action, on the other hand, seeks to "enforce a shareholder's rights against a corporation." *G&N Aircraft*, 743 N.E.2d at 234 (quoting Black's Law Dictionary at 455 (7th ed. 1999)). A direct action may be brought when the shareholder suffers an injury that is a "separate and distinct injury different from that of other shareholders." *Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 646 (7th Cir. 2006). "[A] harm to a corporation that harms a shareholder only through a diminution in share price cannot amount to 'a distinct and separate injury' because all shareholders are essentially harmed in the same manner." *Id.* Examples of "separate and distinct injury" include when a shareholder enters a separate contract with a third party or the corporation exposing the shareholder to "a unique harm, different than general diminution of share price, such as personal exposure on a loan guarantee." *Id.*

Counts V and VI allege that Plaintiffs were "greatly damaged in their respective individual capacities." (ECF 59 at 18, 19). Yet, on the face of the FAC, Plaintiffs' alleged individual harm is related only to their status as shareholders. Their primary harm allegedly is lack of profit distributions from the Company as the result of David's and William's "deliberate scheme to decrease the distributive share of profits payable to [Plaintiffs]." (*Id.* at 18). Plaintiffs also allege that they have been denied access to the Company's books and records and participation in Company management as they are entitled as shareholders. (*Id.* at 17–19). Yet other allegations in Counts V and VI demonstrate that the injury Plaintiffs allegedly suffered would apply to all shareholders, not distinctly to them. *See Massey*, 464 F.3d at 649.

9

For instance, Count V explicitly alleges that David and William breached their fiduciary duties to Plaintiffs as shareholders "by not acting within the best interests of the Company or its other owners . . . ." (ECF 59 at 16). Count V also notes that David and William paid themselves excessive salaries "as disguised or *de facto* distributions, in lieu of making distributions to all shareholders." (*Id.*). Counts V and VI do not allege, or even imply, that Nancy or Donald was in a relationship with David and William separate from their shareholder relationships with the Company. As a result, Counts V and VI fail to allege harm arising from anything but a diminution in the profit distributions they received. In briefing the motions to dismiss, Plaintiffs confirm this conclusion when they explain that they "seek, in addition to their derivative claims, direct damages from David and William for their pattern of depriving their fellow shareholders of the Company's profits." (ECF 79 at 18).

Plaintiffs also invite the Court to infer from the FAC that they are the only shareholders harmed because David and William improperly captured Company money. Yet the FAC identifies other potential shareholders, specifically the recently deceased Peggy Weed and the Peggy Trust, whose profit distributions could have been affected just like Plaintiffs' were based on David's and William's alleged misdeeds. (*Id.* at 4). Counts V and VI then allege that no other shareholders could bring claims against David and William for this cause of action without mentioning the potential shareholder rights and interests of the Peggy Trust or the estate of Peggy Weed in a similar cause of action. (*Id.* at 18, 19). Yet the Trust's and the estate's status as potential

10

shareholders, acknowledged in the FAC, defeats Plaintiffs' suggestion that they are the only shareholders harmed.

Regardless of the effect of the alleged misdeeds on the Peggy Trust or Peggy Weed's estate, Counts V and VI still only plead harm to Plaintiffs arising from the Company's failure to honor shareholder rights, including profit distributions, without alleging any separate, personal liability of David and William to Plaintiffs. *See Massey*, 464 F.3d at 646. Therefore, Counts V and VI are derivative claims even though they are labeled direct claims in the FAC. Count VII in the FAC is identical to Count VII in the original complaint. Accordingly, the Court's previous conclusion that Count VII is a derivative claim stands. (*See* ECF 56 at 6–7).

C. *Barth* **Exception**

In *Barth v. Barth*, the Indiana Supreme Court held that a trial court may treat a shareholder action raising derivative claims related to a closely held corporation as a direct action. 659 N.E.2d 559, 562 (Ind. 1995). In direct actions, the plaintiff is exempt from the restrictions and defenses applicable only to derivative actions, such as the demand requirement set forth in Fed. R. Civ. P. 23.1. *Cf. Cole Real Estate Corp. v. Peoples Bank & Tr. Co.*, 310 N.E.2d 275 (1974). To treat Counts V through VII as direct claims, the Court must find that to do so would not "(i) unfairly expose the corporation or the defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons." *Barth*, 659 N.E.2d at 562 (citing A.L.I., Principles of Corporate Governance § 7.01(d)).

11

Plaintiffs argue that the FAC pleads facts sufficient for Counts V through VII to be treated as direct claims under *Barth*. First, they assert there is "almost zero risk" of other shareholder actions because four of the shareholders—Nancy, Donald, David, and William—are parties here and Nancy, Donald, and David are the only beneficiaries of the Peggy Trust, another potential shareholder. (ECF 79 at 18). In *Cutshall v. Barker*, a shareholder derivative action related to a closely held corporation, with more shareholders than the Company has, was treated as a direct action when two shareholders were not parties to the case. 733 N.E.2d 973, 983 (Ind. Ct. App. 2000). Under that fact pattern, the court found a "very slim" risk of exposure to multiple actions. *Id.* In this case, the risk of multiple actions is also slim because there are only two non-party shareholders who could initiate another action, both of whom presumably maintain close relationships to Nancy, Donald, David, and William. As discussed above, both the Peggy Trust and the estate of Peggy Weed could have shareholder interests in litigation on the issues raised in Plaintiffs' FAC.

Second, Counts V and VI allege that the Company has two known creditors, the Peggy Trust and Key Bank, and that the Company's debts to them are less than Plaintiffs' damages. (ECF 59 at 17, 19). Plaintiffs argue that the creditors would not be prejudiced by their direct claims because they "are not seeking damages from the Company" and do not intend to "imped[e] the Company's ability to honor its obligations to its debtors by way of the Direct Claims." (ECF 79 at 18). Rather, Plaintiffs contend that they seek damages separately and directly from David and William. (*Id.*). The FAC pleads damages in the form of lost profit distributions arising from decreased

12

Company profits at the hands of David and William. Neither the allegations in Counts V and VI nor Plaintiffs' arguments account for the reality that corporate creditors are governed by the rules of priority and secured finance. *See Massey*, 464 F.3d at 647 ("allowing direct recovery when the action is properly a derivative one fails to protect corporate creditors because the proceeds avoid the legal ordering of creditors and investors"); *see also Miller v. Up In Smoke, Inc.*, 738 F. Supp. 2d 878, 882, 884 (N.D. Ind. 2010); *Hubbard v. Tomlinson*, 747 N.E.2d 69, 72 (Ind. Ct. App. 2001). And if Plaintiff were to succeed on Counts V or VI as a direct action, the damages would be paid directly to them, not the Company, effectively displacing the Peggy Trust and Key Bank as priority creditors. *See Miller*, 738 F. Supp. 2d at 884; *Hubbard*, 747 N.E.2d at 70–71. Such an outcome would be inconsistent with the policy of protecting creditor rights that guided the court in *Barth*. *See Barth*, 659 N.E.2d at 562 (quoting *Maki v. Est. of Ziehm*, 55 A.D.2d 454, 455–56, 391 N.Y.S.2d at 707 (1977) ("Petitioner may not be permitted to circumvent the rights of creditors by maintaining a direct action, the potential benefits of which would inure solely to himself.")). The lesser amount of Plaintiffs' alleged damages is not enough to show how much, if anything, the Company's creditors would lose if Plaintiffs were paid first. Thus, the FAC fails to allege that the interests of the Company's creditors will not be materially prejudiced by Plaintiffs' direct claims.

    Lastly, Plaintiffs contend that their direct claims pose no risk of interference with a fair distribution of recovery among interested persons. Counts V and VI include allegations that Plaintiffs "are the only living remaining shareholders of [the Company] and are entitled to recovery of damages that would be owed to them personally." (ECF

59 at 18, 19). This allegation neither accounts for the other non-party shareholders nor offers any facts to lessen concerns that allowing this case to proceed as a direct action would interfere with the fair distribution of recovery.

As a result, Plaintiffs' FAC fails to plead facts showing that the *Barth* exception should apply, and that they should be excused from the requirements of Ind. Code § 23-1-32-1 *et seq.* and Fed. R. Civ. P. 23.1 as to any of their seven derivative claims.

### D.   Demand or Demand Futility

Like the original complaint, Plaintiffs' FAC explicitly states that they did not make "any demand that the [Company]'s directors, officers and/or managers investigate and address the allegations of breach of fiduciary duty, self-dealing, corporate waste, mismanagement, and use of corporate office to achieve personal objectives." (*Compare* ECF 1 at 9, *with* ECF 59 at 9). The FAC does, however, allege that such a demand would be futile because (a) the complaints would be about David and William who would be responsible for investigating their own allegedly bad acts; (b) David and William are not disinterested; and (c) David and William would be subject to a significant risk of personal liability for Plaintiffs' claims. (ECF 59 at 9). Plaintiffs also allege that David's and William's prior withholding of information and interference with their efforts to enforce their shareholder rights also demonstrate that demand for investigation would be futile. (*Id.* at 10). Plaintiffs conclude by alleging that despite knowledge of this action since the original complaint was filed on July 13, 2023, the Company under David's and William's direction have not investigated the allegations or appointed a special litigation committee to do so. (*Id.*).

14

Demand futility exists when it is "a forgone conclusion that the board would not respond to a demand" by particular shareholders. *In re Biglari*, 813 F.3d at 650. In Indiana,

> demand futility can be shown by facts that create a reasonable doubt that a majority of the directors are disinterested (maybe they stood to gain a benefit from board approval of the transactions that would not be shared with the company's shareholders), or that the board was independent, or that it had exercised responsible business judgment.

*Id.* (citing *Piven v. ITT Corp.*, 932 N.E.2d 664, 668 (Ind. 2010); *Carter ex rel. CNO Fin. Group, Inc. v. Hilliard*, 970 N.E.2d 735, 748–49 (Ind. Ct. App. 2012)). "A director is 'interested' for demand futility purposes if a derivative claim poses a significant risk of personal liability for the director." *In re ITT Derivative Litigation*, 932 N.E.2d 664, 668 (Ind. 2010). "Demand is futile if a derivative claim poses a significant risk of personal liability for the directors, but a director is not liable for any action taken as a director unless the breach or failure to perform constitutes willful misconduct or recklessness." *In re Biglari*, 813 F.3d at 650 (internal citations and quotations omitted).

Nothing in the FAC identifies all the members of the Company's board. *See Hale v. China Online, Inc.*, No. 08 C 5548, 2009 WL 2601357, at *4 (N.D. Ill. Aug. 21, 2009), *aff'd sub nom. Hale v. Victor Chu*, 614 F.3d 741 (7th Cir. 2010) ("At a minimum, to allege demand futility Plaintiffs must identify who the directors of China Online were so that this Court can determine if a demand on these specific directors would in fact be futile."). The FAC references David and William as "officers, directors, shareholders, manager and/or members of the Company." (*See, e.g.*, ECF 59 at 10). But there are no allegations identifying other directors or otherwise stating that David and William were

15

the only directors on the Board. Without any such allegation, the FAC does not allow for any determination of whether "a majority of the directors" was disinterested in or faced a significant risk of personal liability for Plaintiffs' claims. *See In re Biglari*, 813 F.3d at 650. Without identifying each board member, Plaintiffs have also failed to allege reasonable doubt that the board was independent. *See, e.g.*, *id.* (identifying every director by name and analyzing the independence of each).

Lastly, the FAC includes no direct allegations regarding the board's exercise of responsible business judgment. The FAC merely alleges that the Company, "under the direction of Defendant(s), has not investigated [the allegations in the FAC] nor appointed a special litigation committee to do the same" since July 13, 2023, when the original complaint was filed. (ECF 59 at 10). Now Plaintiffs argue that the Company's silence or inaction ratified David's and William's alleged misdeeds implying that there is reasonable doubt as to whether the Company's board exercised responsible business judgment. Indeed, "[r]atification by a corporation may be shown by conduct [of corporate officers or agents], without any formal action of its board of directors." *State ex rel. Guar. Bldg. & Loan Co. v. Wiley*, 196 N.E. 153, 154 (Ind. App. 1935). But the FAC includes no direct allegation of board action or inaction from which even an inference of ratification would follow. Therefore, the FAC lacks any allegations to overcome the presumption inherent in Indiana's "strongly pro-management version of the business judgment rule" that the directors making business decisions honestly believe their actions are in the corporation's best interest. *See In re Bilgari*, 813 F.3d at 650 (quoting *G&N Aircraft*, 743 N.E.2d at 238).

16

Thus, Plaintiffs have not alleged demand or demand futility in the FAC as required under Fed. R. Civ. P. 23.1(b)(3) and Ind. Code § 23-1-32-2.

## IV.  CONCLUSION

For the reasons discussed above, Plaintiffs have not stated any claims in their First Amended Verified Complaint for which relief can be granted. Accordingly, David Weed's motion to dismiss (ECF 71), William Weed's motion to dismiss (ECF 74), and Robert Weed Plywood Corporation's motion to dismiss (ECF 73) are **GRANTED** and this case is **DISMISSED**.

SO ORDERED on September 20, 2025

    /s/*Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT